Thank you, Chief Judge Elrod, and may it please the court. In Louisiana, the sheriff is the keeper of the jail. By statute, parish sheriffs are solely responsible for the custody and care of pre-trial detainees in their jails. DPSC's role and responsibility begins only once an inmate is convicted and sentenced. The only relevant undisputed fact is that these plaintiffs were pre-trial detainees in a parish jail. They did exactly what the law anticipates. They sued the parish sheriff, and that claim has now settled. That outcome is exactly what Louisiana's statutory scheme envisions. Plaintiffs have abandoned their official capacity in their Eighth Amendment theories, leaving only the Fourteenth Amendment individual capacity claims. The question before this court in this interlocutory appeal is thus a narrow and purely legal question. Can state-level DPSC officials be held constitutionally responsible for pre-trial detainees when state law vests their custody and legal responsibility solely in the sheriff? Plaintiffs say yes, but the answer, respectfully, must be no. Under Louisiana's statutory allocations, plaintiffs lack Article III standing, and they cannot overcome defendants' qualified immunity on Prong 1. In critical for this state, their theory would not only judicially displace Louisiana's own statutory choice about who runs its jails, it would also expand supervisory liability beyond the confines of any real constitutional duty, knowledge, or fair notice, imposing liability on officials simply because they sit at the top of a complex corrections system. Okay. Is the contract between DPSC and MPCC for the housing of state prisoners in this record? Your Honor, I'm not sure if the contract is in the record, but the contract has no bearing on whether DPSC has custody over pre-trial detainees. Okay. Is the 1996 settlement agreement in the record, or can the court consider it? Your Honor, I don't think it is relevant to the question that is presented in this appeal. Why not? Because there's no question of fact about who controls, because the statutes answer the question. Right, but sometimes via settlement, people agree to assume greater responsibilities or liabilities. In fact, we have a whole genre of these kind of settlements, sue and settle, and all of that, that expand people's responsibilities. And I'm not saying this is that situation at all, but sometimes you can expand your liabilities via agreement that is more than what the statute would require. And so that seems like it wouldn't be irrelevant if it had been expanded. Now, whether or not it would still be in effect, and whether they could bind, and all of that might be issues. Your Honor, I would say that the statutory scheme has to control, and cases repeatedly say that the sheriff is charged with being the keeper of the jail. But if this court has any questions about what the statutory scheme says or where to go with the statutory scheme, then I would urge this court to certify the question to the Louisiana Supreme Court. I think that there is definitive case law from Louisiana courts that make this a very clear question of law, which cuts against the first consideration for certifying the question. Okay, can you tell me why? Do you disagree with the premise that you can expand a statutory responsibility beyond the statutory responsibility through agreement? Do you disagree with that premise? Your Honor, I disagree that an agreement can overwrite Louisiana's laws. Even if the entity is Louisiana that makes the agreement? Well, Your Honor, that would be DPSC making the agreement for the custody of its own convicted inmates that are housed in a parish jail. And that does not have a bearing on who has legal responsibility for the pretrial detainees. Okay, did you make this argument, or you broadly, not you personally, make this argument about your client's lack of responsibility at the motion to dismiss phase? Your Honor, it was briefly discussed at the motion to dismiss phase, I believe. I would have to double check the record, but we definitely made it at the motion for summary judgment stage. And because it's qualified immunity, you can bring it at any stage. So you made this at the motion for summary judgment stage? Yes, Your Honor. Okay. Do you have any statutes that actually refer to sheriffs holding pretrial detainees specifically? The ones that you've given us are pretty general. Your Honor, they don't use the term pretrial detainees, but that's because the sheriff is the keeper of the jail for all inmates in his custody. And as Frettington says, that applies both to pretrial detainees and convicted inmates alike. That would be section 15704, and it says that each sheriff shall be the keeper of the public jail in his parish and shall by all lawful means preserve the peace and apprehend disruptors thereof and other public offenders. And that covers all inmates within his jail. Okay. Then Frettington then would say that if it houses DPSC sentence prisoners, the facility would be subject to the guidelines, wouldn't it? Your Honor, I think Frettington is more limited than what plaintiffs would have you read. The way the statutes work is that through 704 and 706, the sheriff is in charge of everyone in his parish jail. And through 824 and through Frettington, DPSC is responsible at the same time for its inmates. And so for convicted, sentenced inmates, who section 824 says are in the custody of DPSC, and only then, once they are sentenced, can they be in DPSC's custody, there's a dual responsibility. Both the sheriff and DPSC have responsibility over those inmates. But that does not mean— It's not talking about the inmates, though. It's talking about whether the facility houses DPSC sentence prisoners, the cases. Yes, Your Honor, but I think if you look at the facts of Frettington and the analysis, it is talking about DPSC convicted inmates. Right, well, it's talking about facilities that house DPSC sentence prisoners. Parish jails may house sentenced individuals who have been arrested while on parole and are awaiting a parole revocation hearing, for example. Your Honor, they may—parish jails can house pretrial detainees and convicted inmates. That is true. But the statutory scheme still places pretrial detainees solely in the custody of the parish sheriff. Frettington was about DPSC's own prisoners and their release from both legal and physical custody by DPSC. But Frettington's logic doesn't turn on the identity of the plaintiffs, that is, whether they are pretrial detainees or sentenced inmates. It's talking about guidelines for the facility. Yes, Your Honor, but Frettington had no need to talk about pretrial detainees or the statutory framework— Well, you may say the holding's too broad, but it's the holding, isn't it? Your Honor, I think the holding is about convicted inmates in the custody and how they are treated in parish jails. But it did not grapple with or discuss the statutory framework that governs pretrial detainees because these weren't pretrial detainees. They were plaintiffs convicted by DPSC and sentenced to their custody, saying that the state was keeping them too long in this facility. They were directly contesting their legal and physical custody by DPSC, and they were saying, you, the state, are holding us when you have no right to in this facility. And that's why the panel focused on DPSC's power through the jail guidelines and audits and the contracts over the facilities and concluded that there was ample evidence that in that case, DPSC did control the facility that housed their convicted inmates. And that's where the basic jail guidelines come into play and how they should be understood. DPSC has its obligations to its own prisoners, and that's through Section 824. So even when its prisoners are housed in a parish jail and physically in the sheriff's custody, there's that dual responsibility that I talked about, and the guidelines are what ensure that DPSC's constitutional commands and 824 responsibilities are met by the parish sheriff. But that does not mean that those guidelines or control is transferred over to pretrial detainees. Detainees, the Louisiana statutory scheme says, are the sole province of the parish jail. And Louisiana cases read this exactly as written, that the sheriff operates the jail and is responsible for the safekeeping of all of its prisoners, including those who are transferred from other parishes. I would point this court to Amiss v. Dumas, which is 411-SO2D-1137, and it says the sheriff has the duty of operating the jail and seeing to it that the prisoners are properly cared for, fed, and clothed. Federal courts have said the same thing. For example, the Eastern District of Louisiana said that the sheriffs in Louisiana are the final policymakers with respect to the management of the jail. And this court has said similar things. In O'Quindy v. Manuel, the court said that the administration of the jails is the province of the sheriff, meaning that the sheriff has the duty of operating the jails and seeing to it that the prisoners are properly cared for, fed, and clothed. And that's cited back to the Amiss case I mentioned earlier. Well, so does this case just come down to whether we read Crittenden as saying that DPSC has authority to step in and ensure that local parish jails, that house state prisoners must comply with the guidelines? I think this case comes down to whether—I think this case comes down to respecting Louisiana's statutory scheme, and I think you can read Crittenden in a way that does that. I think they can all be in harmony if you look at it at the perspective that those were DPSC inmates, and the basic jail guidelines are meant to ensure that convicted and sentenced inmates' constitutional rights are protected by the parish sheriff, and that it's like a trickle-down theory from DPSC. We can read Crittenden in harmony with the fact that it did not discuss pre-trial detainees. It did not grapple with this framework whatsoever because it didn't need to. Crittenden did not concern pre-trial detainees. And so the question before you is, can viability be placed on state officials when the state statutory scheme says no? And again, to the extent that you grapple with that question or there's any room for plaintiff's view, I would urge this court to certify the question. This is critical to the state of Louisiana to ensure that our statutory scheme is applied the way that our courts read it and the way that it is written. And if we're going to overturn this entire scheme, you can ask the Louisiana Supreme Court what they think. Well, I'm just curious, though. Why would that be appropriate for certification as to what Louisiana would say? If we've said – are you saying Crittenden is wrong if it says DPSC has authority to step in and ensure that local, parish, jails, housing, state prisoners comply with the guidelines? No, Your Honor. I'm saying that you could pose the question, how does the statutory scheme apply to pre-trial detainees? I think that's a different question than what Crittenden answered. What if we don't think it is? Then do you lose? If it's not the same question that Crittenden answered? If it is the same question that Crittenden answered, do you lose irrespective of certification? Your Honor, I don't think so because I think you would have to remand in that instance to the district court for more of an analysis. If we read Crittenden more broadly than you do, you say you had no authority over pre-trial detainees. If we read the holding of Crittenden a little more broadly, what else do you have? How else do you win? I think on remand, the district court would have to go through a full-fledged analysis on deliberate indifference and all the other factors. I think we would win on deliberate indifference and clearly established. Because to be deliberately indifferent, you have to have a conscious disregard. At the time of these incidents, the cases we had were the Louisiana cases, the district court cases, and old Fifth Circuit cases that all said the sheriff is the controller of jails. Crittenden hadn't been released yet. These incidents happened in 2020, 2021, and Crittenden came out in 2022. There's no way that these officials could be deliberately indifferent when the state statutory scheme that they were operating under said that they were not. Can we rule on that now or we need to send that back on remand as you said carefully on remand? Your best arguments perhaps you might think are ones that you have for remand. Your Honor, our best argument is that the state statutory scheme controls. But I understand you're fighting that. I'm not fighting that. I'm trying to explore that. Yes, Your Honor. Our reply brief mentions this notice problem and explains that plaintiff's view would give a notice problem to the officials because they would have no way of knowing that they were liable for pretrial detainees. But we can't deal with that now. We have to send that back to the district court. I think the best method would be to send that particular part back. If you're going to disagree with us on control, then you should remand for further analysis. Isn't that really a question of what was clearly established law at the time? I think they bleed into each other, Your Honor. I think deliberate indifference requires constructive actual knowledge and then a choice to disregard that. Whereas clearly established is what was established at the time. Thank you. Thank you, Ms. Smith. You still have time for rebuttal. Let's hear from Ms. Cumming. Good morning, Your Honors, and may it please the Court. Elizabeth Cumming on behalf of the plaintiffs' alleges. Defendants correctly state that the claims that we believe should proceed to trial are 14th Amendment claims against Seth Smith and former Secretary James LeBlanc. So there's no official right to amendment claims? Yes, Your Honor. Correct. And our position is that this Court can rule on that question now, affirming the district court's denial of the defendant's motion for summary judgment. Felony convicted people are undisputedly the responsibility of the DPSC. And the defendant's insistence on a bright line of demarcation between responsibility for sentenced people versus pretrial people is not supported by the history, the facts, or the law. Where do you believe the source of authority for DPSC to regulate this arises, given that it perhaps is contrary to the statute? It arises ultimately from the shared responsibility between the state, the department, and the local sheriffs arising out of the department's choice to enter into agreements with local sheriffs to resolve the long-running federal civil rights litigation back in 1996. So this guidelines and the settlement are the source of the authority? I believe it's the guidelines. It is also the fact of all of the control that the department is able to exert over these hybrid facilities. So that's the guidelines to control these hybrid facilities. Do you maintain that the DPSC officials have authority outside of the settlement agreement and the guidelines? Yes, Your Honor. In terms of the functional... Where does that come from? The functional control that the department exerts over these hybrid facilities. So that includes the guidelines. It also includes the department's recognition of their need to exercise oversight over these hybrid facilities. So you say it has some free-floating rights to have functional control beyond the guidelines and beyond the settlement? No, Your Honor. It's not free-floating. Part of what came out of the settlement and the system that the department chose to create is a set of hybrid facilities in which sentenced people are held subject to the control of the department. And the thing that gives rise to the challenge here is that sentenced people and pretrial people were being held together indiscriminately, such that the department's control determined what the conditions of confinement were for everybody who was held in such a hybrid facility. If there were not guidelines as a result of the settlement, would you agree that the statute controlled and that you couldn't bring these claims against these officials? Our reading of the statute does not create the bright line that the defendant suggests that it does. 15.824 includes responsibilities. It creates sort of the statutory structure to bless this hybrid structure. It also includes responsibilities for pretrial detainees. So the Department of Corrections pays for medical care for pretrial detainees. The Department of Corrections can be or is required to be involved in moving pretrial detainees around the state when there is an emergency event such as a hurricane. And nothing in the Title 15.704 and 706 statutes dictates or requires exclusive control by the sheriff. That shared responsibility is not precluded by anything in those statutes. So I think if the facts and history establish that there is shared responsibility between the sheriffs and the department, under this court's jurisprudence, that shared responsibility then puts the department in the frame and responsible for conditions of confinement that create a serious risk of harm that resulted in harm to these plaintiffs. What do you do with the point, perhaps you say it's just a remand point, but if Crittenden is, is it 2022 or what year? Yes, Your Honor, it was 2022. Then what do we do with the qualified immunity and clearly established law? Crittenden was about events that occurred in 2017 and 2018. And at that stage in 2022, the court determined that it was sufficiently clearly established that the department had control over these local jails, these local hybrid facilities to exert that control. So if it was clearly established enough for this court in, for events occurring in 2017 and 2018. 2017 and it was established overlaps with your time period. Yes, Your Honor. So 2017 is the time, relevant time period then? Yes, Your Honor. And is that an issue for us on this appeal or is that something on remand for the district court? I think that depends on how this question interplays with the qualified immunity question. Okay. You're not bringing a Jones v. Diamond or Jones v. Dallas County case, are you? That housing these inmates together is constitutionally infirm. That is part of the case. Well, it didn't seem to be part of the case. Where is that? It is in our briefing before the district court. Part of our claim is that there were conditions of violence and those conditions of violence came out of the lack of classification at MPCC and the lack of staffing supervision. So it's a combination of two practices that were leading to an overall condition of violence. I'm not sure if that. Okay. But we're not addressing that today though, right? No, Your Honor. I believe the only thing that needs to really be addressed is whether or not the 14th Amendment individual capacity claims can proceed to trial. Okay. I've got a couple of cleanup questions on that. The brief doesn't deal with Mr. Henderson. What is this? Are his claims abandoned as to him? No, Your Honor. I believe we have some mention of Mr. Henderson as we are also in discussion with Mr. Murray and Mr. Pascal. So you are maintaining claims still against Mr. Henderson? Yes, Your Honor. All of these claims arise ultimately out of conditions of confinement, which impact all three of these plaintiffs. Okay. Are you seeking injunctive and declaratory relief for your individual capacity claims? No, Your Honor. At this time, only damages. Okay. Some of them, one has been released. Another one's in Arkansas. So you're not seeking any of that relief? Yes, Your Honor. Okay. If the court has no further questions, we would submit that given this history, given the law, and given the facts, the district court was correct in finding that DPSC defendants can be directly liable for conditions at a hybrid facility like MPCC. Its denial of DPSC defendants' motion for summary judgment was appropriate. And any questions of the degree of DPSC defendants' knowledge, the control, those are all questions of fact that need to be resolved by the district court. The district court acknowledges this in identifying several areas of fact, and there's enough in the district court's ruling for this court to affirm on these grounds. Do you have any evidence that the audits are defective in this record? Yes, Your Honor. We have quite a bit of evidence related to, all submitted primarily in support of our affirmative motion for summary judgment, plaintiff's affirmative motion for summary judgment. A couple of the key points are these defendants know exactly how to conduct proper audits, and they do so at the state-run facilities. They send in a full team of subject matter experts to the various areas that they need to audit. They spend a week or more at the state-run facilities. They pull records from how the records are kept in the normal course of business at the facility. The audit procedure for the local facilities is dramatically different. A single person goes who is not a subject matter expert in all of the various areas that need to be audited. That person goes and looks through a set of what are called basic jail guideline files. Those files include a single pre-selected record selected by the local facility that is being audited that the team leader, that's the auditor, goes to look through. The audits are about a half-day audit. We have testimony from Chief Smith that that is not an appropriate audit mechanism. He himself is a professional corrections auditor. He understands exactly why that's an inappropriate mechanism. He testified, yeah, you're going to pick the best one, but he also is fully aware that this is how audits are conducted at the local facilities. These defendants are aware that their audit mechanism is inappropriate and not designed to identify constitutional infirmities. Do you want to address certification before you speak your time? Yes, Your Honor. I believe you asked the correct question earlier, which is how does that advance the resolution of this case? There is no dispute that the department is responsible for sentenced people who are held wherever they are held in the state. There's not a real dispute that in these hybrid facilities that were an outgrowth of that 1996 McKeithen settlement, that the department shares responsibility for those hybrid facilities with the sheriff. There's not any real debate that the department exercises significant control over these facilities in the form of the guidelines, in the form of audits, and in the form of really significant economic control. These facilities were built and exist for the purpose of holding state sentenced prisoners. This court's case law, going all the way back to the mid-90s in Alberti v. Clevenhagen, has determined that where a state is holding its prisoners and there are conditions of confinement that violate people's rights or potentially violates people's rights arising from that arrangement, the state can be liable. It is not a question of whether or not state law defines explicitly, oh yes, the department is responsible for sentenced and pretrial people. Again, there is nothing in the state statute that dictates that it is the sheriff exclusively who is responsible for the jail. The sheriff is responsible for the jail, absolutely. The plaintiff sued the sheriff, but the department shares responsibility. Certification would not advance the constitutional liability question that is before this court. If there are no other questions from the court, we respectfully request that this court affirm the district court's denial of the defendant's motion for summary judgment. Thank you, Ms. Cummings. Thank you. I would like to push back on plaintiff's idea that somehow the law was clearly established in 2017 despite Crittenden not coming out until 2022. Again, Crittenden concerned DPSC convicted inmates, and so to the extent it is applicable to this situation, nothing at the time was in case law that would tell DPSC, especially high level officers in their individual capacity, that they somehow individually were responsible for the parish sheriff's choices over pretrial detainees at the time. But if they could be liable in Crittenden, then it would have to have been clearly established, wouldn't it have been? Your Honor, again, Crittenden was about convicted inmates, and I know I'm pressing that point, but it's because it is so critical to the state. We have a statutory scheme that explains the allocation of this responsibility. And so to the extent that the guidelines and everything show DPSC had control over its own inmates, I think that's what Crittenden held and what could be clearly established as of 2017. But that does not mean that it subverts the statutory scheme because the guidelines can't overwrite the statutory scheme. And I think both the record and Louisiana case law show that the guidelines only exist to ensure that Section 824's requirements are met for convicted inmates. And so they work in that way to guarantee the protections that DPSC has to give to its inmates are met by the sheriff. And if the sheriff wanted to, he could make the policy choice to apply the guidelines across the board to both pretrial detainees and convicted inmates alike. But that is the sheriff's choice as the final policymaker for the parish jail. Aren't these people kept together such that you couldn't practically have guidelines applicable for some... If the guidelines can be applicable in the particular dorm or mess hall or whatever, and they're both using it, so you couldn't have... Well, the guidelines apply now because it's this person, but not now when they're going through the cafeteria line. I don't understand how that works. I'll push back on that to say that our entire scheme of prisons imagines that pretrial detainees and convicted inmates have different rights and different sources of those rights and different authorities. That's why pretrial detainees' rights flow from the 14th Amendment and convicted inmates' rights flow from the 8th Amendment. And so we have a situation that's set up where who you are and your status matters for what rights you have and who bears legal responsibility. And so it may seem arbitrary to say person A has this right and person B has that right, but that's how the system works. Right, but it has to be because it's a guideline for the facility or something. So the facility has to be up to the guideline. It's a guideline for how the facility treats DPSC convicted inmates. Is that or is it a guideline of what the facility is required to do? Do you see what I'm saying? The guides don't actually, there's not vis-a-vis each particular person. It's just institutional guidelines about you must have X people on duty and this thing and you can't have the personnel of this. There's parts about opposite sex and there's all these, they're not about the particular inmate. They're about what the facility must do. Pages and pages. I have up here. Yes, Your Honor. In order to protect the convicted inmates, both the record and Louisiana case law says that the guidelines are meant only to ensure the fundamental rights of DPSC prisoners housed in secure DPSC facilities are secured. And so they don't apply to pretrial detainees. And again, I will say that if there's any questions about how the statutory scheme works or how the guideline works, certification is the right move here. Is there a fact question about what this facility was? I'm sorry, Your Honor? Is there a fact question about what this facility was? I don't believe so. This is a parish jail. There's no dispute about that. Even though it housed both? Yes, Your Honor. It's a parish facility. So you're saying the guidelines didn't apply to the sentenced people there? No, I'm saying the guidelines do apply to the sentenced individuals in MPCC, but they do not apply to the convicted inmates. So it is a facility that houses sentenced inmates?  So that facility is subject to the guidelines? The facility is subject to the guidelines to the extent that they control the treatment of convicted inmates. Thank you. Any other questions? Well, threading of the needle at the end there. Thank you, Your Honor.